IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA L. SEYMOUR, ) | |
| ) | |
| Plaintiff, ) | Case No. 04 C 2041 |
| v. ) | |
| ) | |
| CAROL HUG and ROGER HUG, ) | |
| d/b/a REMAX TEAM 2000; ) | Magistrate Judge Jeffrey Cole |
| PATRICIA BROWN-WYRICK; ) | |
| CENDANT MOBILITY CORP., ) | |
| a Corporation; and ) | |
| CURTIS CASTLE and ) | |
| CAROL CASTLE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

On November 9, 2005, following the issuance of the November 8th opinion denying the plaintiff's motion to enforce the settlement agreement and the granting of the defendants' cross-motion to enforce the settlement agreement, the plaintiff's counsel announced at the previously scheduled status hearing that she would be filing a motion for reconsideration. During the initial colloquy, Ms. Matlaw insisted that there had been no intent to deceive either the defendants' counsel or the Surrogate's Court. She could not, however, provide a persuasive reason why she or her colleagues did not inform the defendants' counsel of Ms. Seymour's March 30th refusal to make the allocation of some amount of the settlement to her children, as the defendants' had insisted continuously from the beginning of the negotiations.

The best she could do was to say that given her client's irrationality and temperament, she could not be sure that the March 30th position would remain constant. She could not explain, however, why at no time in the intervening 29 days she did not tell defense counsel about Ms. Seymour's *volte face*. Her

version was that on April 28th the defendants unilaterally decided to drop the allocation requirement, although she could not give any reason why that would have occurred.

Ms. Matlaw claimed that Judge Seibert of the Surrogate's Court had not been deceived in any way since Ms. Seymour's children had no claims and had really not suffered damages except in the relationship with their mother, and because the statute of limitations had run in any event. She could give no persuasive reason why the complaint and amended complaints she and her colleagues drafted said something very different or why the statute of limitations argument had never been raised or even discussed with defense counsel – let alone why these explanations were not made to Judge Seibert in support of the petitions' contention that the children had no claims.[1]

Ms. Matlaw said that the conclusions drawn in the November 8th opinion were based on a core factual mistake, namely that Mr. Howard and not the plaintiff's lawyers had made the change in Paragraph c. (which became Paragraph b.), which deleted the phrase, "and directing the amounts to be paid to the minors' estates." The defendants' brief had categorically said that "[t]his change was made by plaintiff; it was *not* 'excised' by defendants." (*Defendants' Joint Reply In Opposition To Plaintiff's Motion To Enforce Settlement And In Support Of Defendants' Cross-Motion To Enforce Settlement* at 5)(Emphasis in original). I gave Ms. Matlaw leave to file her motion for reconsideration, which dealt solely with this claimed factual error and asked the parties to appear at 2:00 to further discuss the matter. I ordered that Mr. Howard appear and explained that I was deeply concerned over Ms. Matlaw's continued

---

[1] Initially, she tried to say that a student had drafted the petitions, but did not deny that they had been reviewed by her and her colleagues. Indeed, she said they had been reviewed very carefully to be sure there was no violation of the agreement's confidentiality provision. Ms. Matlaw was unable to explain the petitions' allegations that Devin and Peter Madkin were not mentioned in the federal complaint and other similar allegations, which were false, as explained in the November 8th Memorandum Opinion and Order.

2

charges that he was responsible for the critical change in the settlement agreement.

For a variety of psychological and institutional reasons, there is a natural tendency to view motions for reconsideration with a measure of skepticism. But, even though they are generally disfavored, *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191(7th Cir. 1990), motions for reconsideration can serve a valuable function by helping, under appropriate circumstances, to ensure judicial accuracy, which, in the last analysis, is the desideratum of the whole process. Judges are not omniscient; and even the most gifted judges can make mistakes. *Tome v. United States*, 513 U.S.150, 167 (1995)(Scalia, J., concurring in part and concurring in the judgment). Indeed, the Seventh Circuit has cautioned that "in any given opinion, [a court] can misapprehend the facts...or even overlook important facts or controlling law." *Olympia Equipments v. Western Union*, 802 F.2d 217, 219 (7th Cir. 1986).[2]

A careful review of Ms. Matlaw's motion demonstrates its fundamental error and her refusal to come to grips with the indisputable facts of the case. The motion's thesis is that *on April 28th*, Mr. Howard sent a version of the settlement agreement that did not contain any reference to an allocation and which deleted the phrase "and directing the amounts to be paid to the minors' estates." The question, however, is not what the *April 28th version* said, but whether on *April 1st the plaintiff's lawyers* had deleted the phrase "and directing the amounts to be paid to the minors' estates," after receiving Ms. Seymour's March 30th ultimatum.

The November 9th Memorandum Opinion spelled all this out in great detail. The motion for reconsideration chooses to ignore that discussion and to continue to advance a thesis that the indisputable

---

[2] *See also Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992). *LaSalle v. Medco Research, Inc.*, 54 F.3d 443, 444 (7th Cir. 1995); *Cada v. Baxter Health Care Corp.*, 920 F.2d, 446, 452 (7th Cir. 1990).

3

evidence demonstrates is unsustainable. Far from disproving that the plaintiff's lawyers altered Paragraph c., the motion for reconsideration confirms that fact. Exhibit 1 to the motion for reconsideration is the March 11th email from Mr. Howard to Mr. Caruso insisting on a reasonable allocation of some portion of the $40,000 to the children. Exhibit 2 is a March 29th email from Mr. Howard to Mr. Caruso and Ms. Matlaw containing the phrase "and directing the amounts to be paid to the minors' estates." Exhibit 3 is Mr. Howard's April 28th draft which admittedly does not contain the above phrase. Carefully ignored is the April 1st email from the plaintiff's lawyers to Mr. Howard attaching the plaintiff's revisions, which deleted the phrase, "and directing the amounts to be paid to the minors' estates," and characterizing this and other changes as minor and non-substantive. All the April 28th version did was to incorporate the deletion the plaintiff's lawyers had made. In sum, the indisputable facts of the case reveal that two days after Ms. Seymour decided she would not make any allocation to her children – even though she had agreed two weeks earlier to do so – the plaintiff's lawyers excised the critical phrase in Paragraph c. and assured Mr. Howard that the change really meant nothing at all. "The mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity." *Avery v. Georgia*, 345 U.S. 559, 564 (1953)(Frankfurter, J., concurring).

The hearing on the motion was reconvened at 1:45 p.m. Mr. Howard appeared as did Ms. Matlaw and Ms. Cribaro-Mello.[3] Ms. Matlaw now said that she had made a mistake in the motion to reconsider, that the plaintiff's lawyers had indeed made the change on April 1st, and that she had only just learned of her error. Nonetheless, she continued to insist that the defendants were responsible for what

---

[3] Mr. Caruso had a preexisting commitment and I had excused his appearance.

occurred by saying nothing about the change and incorporating it into the April 28th version, which she said effectively did away with the allocation provision. Not surprisingly, she offered no explanation as to why the defendants would have dropped a condition upon which they insisted from the beginning and to which Ms. Seymour had agreed on March 14th. At bottom, Ms. Matlaw's argument is nothing more than "shame on you for taking me at my word, when I said that the change was minor and not at all substantive." But that sort of approach has little to commend it either as a matter of law or candor. *Cf. Ash v. Georgia Pacific*, 957 F.2d 432, 436 (7th Cir. 1992)("'[A] liar may not lull the victim into a false sense of security and then say that the reliance was not justifiable.'"). [4]

She also continued to insist that notwithstanding her concession of error, the opinion of November 8th was still wrong insofar as it suggested any misconduct by the plaintiff's lawyers. Her explanations, at least to me, defied understanding. Part of her justification was that they had conceded on many points that Mr. Howard had insisted on, although I am at a loss to understand how that excuses what was done to the defendants and to Judge Seibert. What was clear, however, was that not a single one of the justifications now offered in defense of the post-March 30th conduct was advanced to the defendants at the time they complained about what had occurred in New York. *Compare Ty, Inc. v. Publications International Ltd.*, 2003 WL 21294667 (N.D.Ill. 2003)(Zagel, J.)("[P]erhaps the most telling evidence that discovery included damages is the fact that when Ty moved for summary judgment on the issues of damages, PIL never objected on the ground that it needed additional discovery."). By contrast, the defendants complained immediately, bitterly, and consistently with what they now contend when they learned about

---

[4] There was an apparent suggestion that the plaintiff's lawyers considered this a minor, non-substantive change. That is at odds with the evidence in the case and with common sense.

5

the presentation to Judge Seibert.

In response to my questions, Mr. Howard said that from April 1st on he dealt almost exclusively with Mr. Caruso. Ms. Matlaw, in response to my question, said that she had communicated the content of Ms. Seymour's March 30th email to Mr. Caruso, and it was conceded by all that no one on the plaintiff's side had ever told any of the defense counsel of Ms. Seymour's March 30th email to her lawyers. When I asked Ms. Matlaw why she had unilaterally changed the phrase, "the claims of the minor children," to "any claims of the minor children," she said it was to make the releases more protective of Ms. Seymour and to release any claims the children might have had against her for failure to have filed a separate lawsuit on their behalf at an earlier time.

This answer is singularly unpersuasive – and in a sense, somewhat disturbing. The sole purpose of the petitions to Judge Seibert was to obtain his approval of the proposed settlement with *the defendants* in the instant case and a release of the children's claims against them, of whatever nature. It was most assuredly not to obtain a release against Ms. Seymour or the world at large. Thus, the phrase, "any claims," must be understood in the context of the petitions' specific and narrow purpose, for "[t[he principle determinant of meaning is context...." Scalia, A Matter Of Interpretation: Federal Courts And The Law, 1, 35 (1997). "When context is disregarded, silliness results." *In re Handy Andy Home Improvement Centers*, 144 F.3d 1125 (7th Cir. 1998)(Posner, J.).[5] In short, it simply cannot be said that the issue of Ms. Seymour's possible nonfeasance was truly intended by Ms. Matlaw to be encompassed within the

---

[5] *Compare King v. St. Vincent's Hospital*, 502 U.S. 215 (1991); *Textrom Lycoming Reciprocating Engine Division v. United Automobile, Aerospace & Argicultural Implement Works*, 523 U.S.653 (1998).

scope of the release the petitions asked Judge Seibert to approve. If Ms. Matlaw's current explanation is genuine, it would certainly appear that the change in phrasing was designed not to "fully apprise" the Surrogate's Court, but to smuggle into the release a claim which Judge Seibert could not have imagined was being released.

For the above reasons, the motion to reconsider is denied. The defendants, having indicated that they wish to pursue the matter of fees, their consolidated brief will be due in accordance with the schedule in the November 8th Memorandum Opinion and Order.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: November 9, 2005