IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA L. SEYMOUR, | ) |
| Plaintiff, | ) Case No. 04 C 2041 |
| v. | ) |
| CAROL HUG and ROGER HUG, d/b/a REMAX TEAM 2000; PATRICIA BROWN-WYRICK; CENDANT MOBILITY CORP., a Corporation; and CURTIS CASTLE and CAROL CASTLE, | ) Magistrate Judge Jeffrey Cole |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This case has its genesis in Donna L. Seymour's unsuccessful attempt to purchase a home in a suburb of Chicago from realtors, Roger and Carol Hug, Patricia Brown-Wyrick and H&H Realty, Inc. and Cendant Mobility Corp. and Curtis and Carol Castle. According to Ms. Seymour, although she had successfully negotiated a contract for the purchase of the home, the defendants "sold it out from under her" when they discovered she was African-American. On March 18, 2004, Ms. Seymour filed a complaint alleging unlawful discrimination against her on the basis of race in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3605, 3617, and breach of contract under Illinois state law. A week later, she amended her complaint, and she did so again on August 20, 2004. Discovery ensued as did intensive settlement discussions.

After much back and forth, the parties agreed upon terms of settlement. Since the plaintiff's minor children were implicated in the case, although not formally named as parties, the defendants

insisted on a release of any potential claims by them approved by the Surrogate's Court in New York. It was agreed that some (minimal) amount of the $40,000 that was being paid to Ms. Seymour would be allocated to her children so that there could be no question about whether the release was supported by consideration. On this issue, the defendants were unyielding. Ms. Seymour's lawyers agreed that there would be an allocation and counsel for the defendants were informed that there was a settlement and its terms were spelled out through an exchange of emails.

From that point on, things dramatically devolved: Ms. Seymour informed her lawyers she would not agree to any allocation, and her *volte face* was concealed from defense counsel by her lawyers. In addition, the allocation requirement in the formal settlement agreement was deleted by Ms. Seymour's lawyers, and the importance of the deletion minimized and misrepresented. Contrary to the terms of the settlement agreement and the requirements of New York law, Ms. Seymour's lawyers failed to "fully apprise" the Surrogate's Court of all of the information needed to make an informed determination of whether the settlement "was in the childrens' best interests." Quite the contrary; they affirmatively misled the Court by making it appear that the children had no possible claims and no involvement the discrimination against their mother.

Ultimately, the defendants became suspicious and demanded answers, which were not immediately forthcoming. Ultimately, all that had occurred was revealed. Both sides insisted that they were in the right, and that they had been ill-used by their colleagues. Cross-motion to enforce their respective versions of the settlement agreement ensued. The squalid details are discussed in Seymour v. Hug, 413 F.Supp.2d 910 (N.D.Ill. 2005). I concluded that the defendants' were in the right and that Ms. Seymour's lawyers had misled their colleagues and the Surrogate's Court in New York. I ordered what in effect was specific performance of what I found to be the agreement that

Ms. Seymour and the defendants had made. The defendants, not surprisingly, had sought an award of attorneys' fees. Since the request was essentially unsupported and unexplained, I ordered additional briefing. *Id.* at 933. The plaintiff's motion for reconsideration was denied on November 10, 2005. *Id.*[1]

Thereafter, in an informal meeting in my chambers with counsel for both sides, including Ms. Matlaw, I suggested that counsel might consider agreeing on a mutually acceptable figure that would compensate the defendants for the work that they had done in connection with the plaintiff's motion to enforce the settlement agreement and in their cross-motion. In due course, Ms. Seymour's lawyers complied with the terms of the settlement agreement and apprised Judge Seibert of all that had occurred. In early April 2006, an agreement on fees was reached between the defendants and Ms. Matlaw and her co-counsel that was approximately half the amount that the defendants contended they had expended in legal fees.

On April 10, 2006, I entered an order – prepared by Ms. Matlaw's co-counsel – captioned "Settlement Order." To the opening sentence, "this matter coming on to be heard on the motion for entry of a settlement order and the Court being fully advised in the premises," – I added in my handwriting, the following: "that the case is settled:" I initialed my handwritten addition.[2] The order went on to provide that within 14 days certain payments would be made, which included payments for attorneys' fees to the defendants that Ms. Matlaw and her co-counsel had undeniably agreed to do. Paragraph 3 of the order provided that the case was dismissed without prejudice, with

---

[1] The motion for reconsideration was based on a false factual premise, which the plaintiff's lawyer, Ms. Matlaw, ultimately was forced to concede. The motion for reconsideration was ill-considered and baseless.

[2] The punctuation after the word "settled" is a colon, not a question mark.

3

the court to retain jurisdiction for 90 days to enforce the settlement agreement.

On April 26, 2006, Ms. Matlaw, acting on her own behalf, filed "Objections" with Judge Marovich to my order of April 11, 2006, even though Judge Marovich had no jurisdiction since the case was here by consent since August 25, 2004. On May 3, 2006, I granted the defendants' motion to modify the order to extend for 10 days compliance with the settlement agreement. Meanwhile, on May 19, 2006, Judge Marovich denied Ms. Matlaw's objections since jurisdiction to hear any appeal from final orders or magistrate judges in consent cases lies exclusively with the Court of Appeals. *See* 28 U.S.C. §636(c)(3). Judge Marovich's order was docketed on May 23, 2006. On May 26, 2006, Ms. Matlaw filed her notice of appeal to the Seventh Circuit of Judge Marovich's denial of her "objections" to my April 11, 2006 order, which the notice of appeal states "is also being appealed herein."

While her case is pending in the court of appeals, Ms. Matlaw has returned here and asked me to "rescind" the post-November 10, 2005 fee arrangement she admittedly made with the defendants.[3] She contends that Rule 60(b), Federal Rules of Civil Procedure, authorizes the relief since the agreement is "unenforceable having resulted from a material Mutual Mistake of Fact (that defendants could incur liability to the Minors upon their achieving majority, and that Plaintiff's Initial Petitions to Approve Settlement on their behalf, in not advising of such "springing liability," was materially deceptive in the manner by which she sought the Judge's approval." (*Amended and Supplemented Memorandum of Law in Support of Counsel's Request for Partial Relief From Judgment at* unnumbered page 2)(parenthesis in original). Astonishingly, Ms. Matlaw notes that she

---

[3] Although the agreement was not signed, Ms. Matlaw's supporting memorandum concedes both its existence and its enforceability (in the absence of fraud or mistake) (*Memorandum* at unnumbered page 2).

4

seeks no sanctions against the defendants. (*Id.* at unnumbered page 5.).[4] This statement, especially in the overall context of the case, "bring[s] to mind George Jacques Danton's famous phrase-- l'audace, encore de l'audace, toujours de l'audace (audacity, more audacity, always audacity)...." *United States v. Walsh*, 700 F.2d 846, 850 (2d Cir. 1983)(parenthesis in original).

The motion is supported by general propositions about mutual mistake of fact and their effect on contract formation. But "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905) (Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J. concurring in part and dissenting in part)("'general observations'" suffer from the common flaw that they are not applied to the specific matter and "therefore they tend to be not only general, but vague and abstract."); *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.).

In the instant case, the argument that there has been a "bedrock mutual mistake of fact or of law," and a "uniform misapprehension of New York law" is frivolous and ignores the November 8, 2005 opinion and the denial of Ms. Matlaw's motion for rehearing on November 10, 2005.[5] There were no material mistaken assumptions on which Ms. Matlaw and the defendants based their fee agreement. It is nonsensical to suggest that there was a mutual mistake of fact regarding what I found to be the materially deceptive manner in which Ms. Matlaw sought the Surrogate's Court's approval. Ms. Matlaw certainly did not agree with that holding, and indeed, protested vigorously at the oral argument today that she was innocent of any wrongdoing. Thus, the parties did not

---

[4] The parties are agreed that the pendency of Ms. Matlaw's appeal in the Seventh Circuit does not deprive me of jurisdiction to hear this motion, and I am proceeding on that assumption.

[5]

proceed on some shared misperception about what the opinion said or its validity.[6] Similarly, there was no mutual mistake of fact regarding the question of consideration for the release of the children. As explained in the November 8 and 10, 2005 opinions, the defendants insisted that there be an allocation to the children so that there could be no future claim that the release was invalid because unsupported by consideration. It did not matter whether the defendants' concerns about New York law's requiring consideration for a release were well-founded or whether New York law did or did not actually have such a requirement. As discussed in detail in the November 10th opinion, the defendants bargained for some payment to the children to alleviate the possibility of a future claim, and Ms. Seymour's lawyers agreed to it.

Thereafter, Ms. Seymour changed her mind, but her lawyers chose not to tell the defendants and allowed them to proceed on the mistaken assumption that there was going to be an allocation. Consistent with their concealed breach of the settlement agreement, Ms. Seymour's lawyers gulled the Surrogate's Court as described at length in the November 8th and 10th opinions. The only mistake of fact in this case is unilateral and was the defendants who relied, foolishly as it turns out, on Ms. Seymour's lawyers' representations.

Finally, Ms. Matlaw's present contention that there was a mutual mistake of fact regarding the applicability of the statute of limitations to any claims that might be brought by the children is singularly disingenuous. (*Plaintiff's Memorandum* at unnumbered page 9). As pointed out in the November 10th opinion, the statute of limitations was never discussed with defense counsel. 413 F.Supp.2d at 934.

---

[6] If Ms. Matlaw concluded that the opinion was correct, that is not a mutual mistake of fact as that term is used in the law.

6

If Ms. Matlaw thought the November 8 and November 10 decisions wrong, her recourse was not to have agreed to pay the defendants' attorneys' fees in connection with the misconduct that I found existed, but rather to have allowed a fee award to be entered – if in fact it was deemed appropriate – and then to appeal that award. She chose a very different course, and she is bound by her voluntary decision.[7] In effect, Ms. Matlaw's agreement with the defendants regarding the question of liability for attorneys' fees constituted a settlement agreement with the defendants on the discreet issue of her liability for attorneys' fees. A settlement agreement is a contract and is governed by principles of law applicable to contracts generally. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 455 (7th Cir.), *cert. denied*, 502 U.S. 939 (1991). Parties to a settlement agreement, otherwise enforceable, cannot avoid the agreement merely because one of them has second thoughts. *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986). This principle is reflective of the more encompassing principle that since equity does not act to relieve parties of voluntarily undertaken obligations, in order to rescind a settlement agreement, the disgruntled party must demonstrate through clear and convincing evidence that the agreement was entered into as a result of fraud or mutual mistake. *Cameron v. Bojusz*, 305 Ill.App.3d 267, 271, 711 N.E.2d 1194, 1197 (1999); *Melzer v. Bausch & Lomb, Inc.*, 193 Ill.App.3d 59, 549 N.E.2d 817 (1989). Those factors are strikingly absent here.[8]

Neither the shortness of life nor the scarcity of judicial resources can countenance an

---

[7] Following the November 10th denial of the motion for reconsideration, Ms. Seymour terminated her relationship with Ms. Matlaw and agreed to all the terms of the settlement, with which she faithfully complied. Ms. Seymour was thus acting on her own behalf.

[8] Even preposterous terms are enforceable if that is what is actually intended. *Beanstalk Group. Inc. v. AM General Corp.*, 283 F.3d 856 (7th Cir. 2002) (Posner, J.).

7

approach to settlement agreements that makes them test runs, subject to revision whenever a party decides she does not like the terms.

In sum, there was no mutual mistake of fact on which the original settlement was bottomed, and there most assuredly was no mutual mistake of fact (or law) on which Ms. Matlaw's agreement to pay attorneys' fees to the defendants was based. Ms. Matlaw's current motion simply ignores all that has occurred in the case, and effectively puts out of view the November 8th and November 10th opinions. It is, in some ways, nothing more than a thinly disguised motion to reconsider those decisions. Apart from being frivolous, it is untimely under Rule 59(e), Federal Rules of Civil Procedure. Ms. Matlaw's motion for partial relief from judgment [125] [126] is denied.[9]

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 8/3/06

---

[9] Ms. Matlaw said that the mutual mistake was not apparent until Judge Seibert had issued his orders, although she could not explain how those orders affected the present issues. Moreover, Judge Seibert's orders were issued months before Ms. Matlaw's present motion. Ms. Matlaw also said that she continues to represent Ms. Seymour even to this day and thus, quite apart from the fact that orders are matters of public record, she would have known about the order, which she now claims is so critical to her motion.

8